# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE, TENNESSEE

BRIANNE SAWYER and LUKE SAWYER,

    Plaintiffs,

vs.

RED TOP EXTERIORS AND ROOFING, LLC;
DIAMOND R BUILDERS, LLC; ERIK W.
RUSSELL; and DAVID BARTLETT,

    Defendants.

No:

**JURY TRIAL DEMANDED**

## COMPLAINT

Come Plaintiffs, Brianne Sawyer and Luke Sawyer ("Plaintiffs"), by and through counsel, and for their cause of action against Defendants Red Top Exteriors and Roofing, LLC; Diamond R Builders, LLC; Erik W. Russell; and David Bartlett, ("Defendants") would respectfully demonstrate the following to the Court:

## PARTIES AND JURISDICTION

1. Plaintiff Brianne Sawyer ("Mrs. Sawyer") is a citizen and resident of Orange County, California.

2. Plaintiff Luke Sawyer ("Mr. Sawyer" – Mr. Sawyer and Mrs. Sawyer collectively being "Plaintiffs" or the "Sawyers") is a citizen and resident of Orange County, California.

3. Defendant Red Top Exteriors and Roofing, LLC ("Red Top") is a Georgia corporation duly authorized to transact business in Tennessee. Red Top's primary place of business is located at 2231 Murphys Chapel Drive, Sevier County, Tennessee 37876. Process may be served on Red

1

Top through its registered agent, Registered Agents Inc., at 5810 Shelby Oaks Drive, Suite B, Memphis, Tennessee 38134.

4. Defendant Diamond R Builders, LLC ("Diamond R") is a defunct (administratively dissolved) former Tennessee limited liability company which may be served with process in care of its registered agent, Erik W. Russell, at the company's registered address: 2231 Murphys Chapel Drive, Sevierville, Tennessee 37876.

5. Defendant Erik W. Russell ("Russell") is a citizen and resident of Sevierville, Tennessee and may be served with process at his last known business address, 2231 Murphys Chapel Drive, Sevierville, Tennessee 37876.

6. At all times relevant to this action, Russell was the president and owner of Red Top.

7. Defendant David Bartlett ("Bartlett") is a citizen and resident of Sevierville, Tennessee and may be served with process at his last known business address, 2231 Murphys Chapel Drive, Sevierville, Tennessee 37876.

8. This Court possesses original jurisdiction over this action pursuant to 28 U.S.C. § 1332, insofar as Plaintiffs and Defendants are citizens of different States and the amount in controversy exceeds $75,000.00.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) in that all Defendants reside in this federal judicial district and a substantial part of the events giving rise to the claims asserted herein occurred in this federal district.

## FACTS

### *Building Contract and Start of Construction*

10. On or about September 29, 2021, Plaintiffs entered into a "Single-Family Home Building Contract" (the "Building Contract") with Red Top for a contract price of $571,440.00.

2

11. A true and accurate copy of the Building Contract is attached hereto as **Exhibit 1**.

12. Russell executed the Building Contract on behalf of Red Top. *See* Exhibit 1.

13. In the Building Contract, the property the home (the "House") was to be built on is referred to as "Lot 105 Bluffs Mtn" (the "Property"). *See* Exhibit 1.

14. A closing occurred pursuant to the Building Contract on October 26, 2021, consummating the Building Contract.

15. Red Top began the first step of constructing the House, excavation, in January of 2022.

16. Throughout the construction process, Russell and Bartlett served as Plaintiffs' main points of contact with Red Top.

17. Bartlett's email signature states that he is the controller of Diamond R.

18. Plaintiffs have no knowledge of the nature of any business relationship between Red Top and Diamond R.

### *Change Order*

19. The contract price set forth in the Building Contract was "subject to additions, material shortages and deletions by Change Order." *See* Exhibit 1. Specifically, the contract price is "subject to change, if any one *material increases in price by more than 7.5% (Seven and One-Half Percent) from the date of [the] contract*" and the "Buyer/Owner shall be responsible" for that cost increase. (emphasis added). *See* Exhibit 1. The full text of this clause states:

> **Contract Price.** The Buyer/Owner agrees to pay the total Contract Price for all labor, materials (including above listed additions and upgrades), commissions, Contractor fee and work performed by the Contractor Five Hundred Seventy One Thousand and Four Hundred Fourty **Dollars, ($571,440.00**_____) subject to additions, material shortages, and deletions by Change Order. Contract Price is subject to change, if any one material increases in price by more than 7.5% (Seven- and One-Half Percent) from the date of this contract. Buyer/Owner shall be responsible for the cost of any increase above 7.5% (seven and a half percent).

3

*See* Exhibit 1.

20. Additionally, pursuant to the Building Contract, the changes or overages referenced in the above paragraph "***should be in writing and agreed upon by the Buyer/Owner*** and the contractor." (emphasis added). *See* Exhibit 1. Such changes or overages "***will be due at the time of the authorization*** of the change." (emphasis added) *See* Exhibit 1. The full text of this clause states:

> **Change Orders.** Without invalidating this contract, the Buyer/Owner may request changes in the work and at the contractor's discretion the contractor may perform the work. Changes or overages to the home should be in writing and agreed upon by the Buyer/Owner and the contractor. Overages, if any, will be due at the time of authorization of the change. If the Buyer/Owner makes changes without knowledge or agreement of the cost of the change or without the Contractor's knowledge of the change or the amount of the change, the Buyer/Owner will be responsible for the change.

*See* Exhibit 1.

21. On November 18, 2022, Bartlett notified Mrs. Sawyer, via email, that Red Top had incurred $87,128.62 in overages, *i.e.*, charges beyond the amounts listed in the schedule of values, since beginning construction.

22. Four days later, Red Top officially issued the change order (the "Change Order") to Mrs. Sawyer.

23. A true and accurate copy of the Change Order is attached hereto as **Exhibit 2.**

24. The Change Order states that Plaintiffs owe Red Top $67,496.29 in overages. *See* Exhibit 2.

25. The Change Order was attached to an email from Bartlett stating that the overages not included on the Change Order, amounting to $19,632.33, would be included on future change orders, making the outstanding total of overages $87,128.62.

26. A true and accurate copy of the aforementioned email is attached hereto as **Exhibit 3**.

4

27. Upon information and belief, Russell and/or Bartlett authorized and directed that the Change Order be sent to Ms. Sawyer.

28. At the time the Change Order was issued, the House was only in the framing stage.

*Change Order Not Authorized*

29. Red Top never sought authorization from the Plaintiffs for the overages set forth in the Change Order, as required by the Building Contract.

30. The Change Order contained overages dating all the way back to the excavation stage of construction, which concluded in May of 2022. Yet, Plaintiffs were not notified of any overages until November 18, 2022. *See* Exhibit 2.

31. Mrs. Sawyer contacted Red Top via email shortly after first being informed of alleged overages, concerned that the build was already $87,128.62 over the contract price despite the House only being in the framing stage.

*Overages for Labor Price Increases*

32. Bartlett stated, via email, that a portion of the overages claimed on the Change Order were due to an increase in labor prices. However, the Building Contract makes it clear that overages are solely limited to increases in the price of <u>*materials*</u> over 7.5%. *See* Exhibit 1.

33. A true and accurate copy of the aforementioned email is attached hereto as **Exhibit 4**.

*Lack of Material Price Increase Documentation*

34. Ms. Sawyer requested that Red Top provide documentation for the material overages on the Change Order, to confirm that they reflected material prices that had increased over 7.5% since the execution of the Building Contract.

35. In response, Red Top merely produced receipts of some of the materials purchased, providing nothing to prove that the price of the materials had increased by over 7.5% since the Building Contract was executed.

36. Further, many of the receipts Red Top provided stated that the materials purchased were to be used in construction on other, unrelated properties.

### *Furniture Credit*

37. Exhibit B to the Building Contract references a "Personal Property Exhibit." *See* Exhibit 1.

38. The Personal Property Exhibit, which is actually titled "Personal Property Bill of Sale," (the "Personal Property Bill of Sale") is attached hereto as **Exhibit 5**.

39. The Personal Property Bill of Sale states that Red Top was to provide Plaintiffs with a $40,000.00 furniture credit to Smoky's Furniture store upon closing on the Property.

40. Russell executed the Personal Property Bill of Sale.[1] *See* Exhibit 5.

41. As stated above, closing on the Property occurred on October 26, 2021.

42. Although over sixteen months have passed since closing, Plaintiffs have still not received the $40,000.00 furniture credit from Red Top.

### *Draws for Work Not Performed*

43. The Building Contract states that payment for construction shall be made through several draws throughout the construction process.

---

[1] The Personal Property Bill of Sale states that Allen Ware and Amanda Ware, who sold the Property to Plaintiffs, were to provide the furniture credit to Plaintiffs, despite Russell's signature appearing on the seller signature line. Therefore, it appears the inclusion of Allen Ware and Amanda Ware was an error.

6

44. Specifically, the Building Contract notes that the "draw schedule," Exhibit D to the Building Contract, "is a detailed payment plan *based upon construction milestones reached*." *See* Exhibit 1.

45. Mrs. Sawyer received the fifth draw request (the "Fifth Draw Request") from Red Top on December 3, 2022.

46. A true and accurate copy of the Fifth Draw Request is attached hereto as **Exhibit 6**.

47. Russell signed the Fifth Draw Request. *See* Exhibit 6.

48. Based upon Russell's signature, and upon information and belief, Russell authorized and directed that the Fifth Draw Request be sent to Ms. Sawyer.

49. The Fifth Draw Request contains a charge for "Finish Roof Materials" in the amount of $10,285.00. However, the House has not been roofed. *See* Exhibit 6.

50. The below photo of the House was taken in February of 2023:



51. A true and accurate copy of the above photo is attached hereto as **Exhibit 7**.

52. Additionally, the Fifth Draw Request states that framing is "100%" completed, however, a set of stairs leading to the bottom floor of the House, as seen in the floor plans, Exhibit A to the Building Contract, are missing. *See* Exhibit 1, Exhibit 6.

53. Mrs. Sawyer received the sixth draw request (the "Sixth Draw Request") from Red Top on January 18, 2023.

54. A true and accurate copy of the Sixth Draw Request is attached hereto as **Exhibit 8**.

55. Russell signed the Sixth Draw Request. *See* Exhibit 8.

56. Based upon Russell's signature, and upon information and belief, Russell authorized and directed that the Sixth Draw Request be sent to Ms. Sawyer.

57. The Sixth Draw Request contains a charge for "Septic/Sewer" in the amount of $7,714.44. In an email to Mrs. Sawyer, Bartlett explained that this was the cost of the septic tank that was installed on the Property. *See* Exhibit 8.

58. A true and accurate copy of the aforementioned email is attached hereto as **Exhibit 9**.

59. However, there are no signs to indicate that a septic tank was ever installed on the Property.

### *Subcontractor Liens*

60. On December 1, 2022, Plaintiffs received a copy of a "Notice of Prompt Pay Act" from Angel Lopez d/b/a Jireh Construction to Red Top, stating that Red Top had failed to pay them for $2,500.00 of work performed on the Property.

61. A true and accurate copy of the Notice of Prompt Pay Act is attached hereto as **Exhibit 10**.

62. Angel Lopez d/b/a/ Jireh Construction has never performed work on the Property.

63. Upon information and belief, Red Top has not paid Angel Lopez d/b/a Jireh Construction the $2,500.00 claimed, or otherwise resolved this matter.

64. On January 19, 2023, Plaintiffs received a letter and "Notice of Lien and Sworn Statement" (the "Notice of Lien") from 84 Lumber Company, notifying them that 84 Lumber Company would be filing a mechanic's lien against the Property in the amount of $41,534.32 for materials provided to Red Top.

65. A true and accurate copy of the Notice of Lien is attached hereto as **Exhibit 11**.

66. Some, if not most, of the materials provided 84 Lumber Company provided to Red Top were included in the fourth draw request ("Fourth Draw Request").

67. Mrs. Sawyer received the Fourth Draw Request on October 14, 2022, requesting payment in the amount of $36,000.72.

68. Along with the Fourth Draw Request, Red Top sent Mrs. Sawyer an "Affidavit of Bills Paid and Release of Liens by Contractor" (the "Affidavit").

69. A true and accurate copy of the Fourth Draw Request and the Affidavit are attached hereto as **Exhibit 12**.

70. The Affidavit states:

> Contractor represents, warrants, and certifies that all bills owed by the Contractor for materials furnished and labors performed in connection with the Work have been or will be fully paid and satisfied. If for any reason a lien or liens are filed for materials or labor against the Property by virtue of the Contractor's participation in the Project by any person claiming by, through, or under the Contractor, then Contractor will immediately obtain a settlement of such lien or liens and obtain and furnish to the owners of the Property a release thereof. Contractor shall indemnify such owners and their respective heirs, successors and assigns from any such bill or liens and from all costs and expenses, including attorney's fees, incurred in discharging any such bills or removing such liens.

*See* Exhibit 12.

71. Russell executed the Affidavit. *See* Exhibit 12.

72. Based upon Russell's signature, and upon information and belief, Russell authorized and directed that the Fourth Draw Request and Affidavit be sent to Ms. Sawyer.

73. Plaintiffs paid the Fourth Draw Request, in its entirety, shortly after receiving it.

9

74. Additionally, Plaintiffs paid for all of the draw requests proceeding the Fourth Draw Request in their entirety.

75. However, as made evident by the Notice of Lien and Sworn Statement received from 84 Lumber Company, Red Top did not pay 84 Lumber Company for the materials provided, as sworn to in the Affidavit.

### *Damages Incurred*

76. Plaintiffs refused to pay for the overages listed in the Change Order due to Red Top's failure to obtain their authorization pursuant to the Building Contract, inclusion of labor cost overages which are not recoverable under the Building Contract, and failure to provide documentation showing that material prices increased by over 7.5%.

77. On December 5, 2022, Bartlett sent an email to Mrs. Sawyer, claiming that her only options were to: (1) pay Red Top the full $87,128.62 in claimed overages, (2) have a third-party investor take over the Building Contract, or (3) face a lien foreclosure by Red Top.

78. A true and accurate copy of the aforementioned email is attached hereto as **Exhibit 13**.

79. Plaintiff refused to accept any of these unfair and unreasonable options.

80. Citing Plaintiffs' refusal to pay for the Change Order charges, Red Top stopped construction on the Property in December of 2022.

81. The Building Contract states that Red Top estimated that the home would be "substantially complete within approximately Two Hundred and Forty (240) to Three Hundred (360) calendar days, which shall start the day excavation commences." *See* Exhibit 1.

82. As a result of Red Top's refusal to continue and finish construction of the home in a timely manner, the home remains in the framing stage more than thirteen months after excavation commenced.

10

83. Accordingly, Plaintiffs have suffered the damages including, but not limited to:

   a. Loss of income from renting out the Property;

   b. An increase in interest rate on their construction loan;

   c. A potential increase in cost to hire a new builder to finish constructing the home.

### *Notices of Prompt Pay Act and Mechanic's Lien*

84. On February 27, 2023, Red Top and Diamond R, through counsel, sent Mrs. Sawyer a Notice of Prompt Pay Act, demanding payment for the claimed overages in the amount of $45,522.543 within ten (10) days.

85. A true and accurate copy of the Notice of Prompt Pay Act is attached hereto as **Exhibit 14**.

86. On March 2, 2023, six days after the Notice of Prompt Pay Act was sent, Red Top and Diamond R, through counsel, sent Mrs. Sawyer a Second Notice of Prompt Pay Act, this time demanding payment for the claimed overages in a different amount, $86,666.21, within ten (10) days.

87. A true and accurate copy of the Second Notice of Prompt Pay Act is attached hereto as **Exhibit 15**.

88. On March 8, 2023, six days after the Second Notice of Prompt Pay Act was sent, Red Top sent Plaintiffs a Notice of Lien, alleging that the Plaintiffs owe Red Top $86,666.21 and claiming a mechanic's lien on the Property pursuant to Tenn. Code Ann. § 66-11-101 *et seq.*

89. The above referenced Notice of Lien was filed with the Register's Office for Sevier County at Book 6281, Page 823.

90. A true and accurate copy of the Notice of Lien is attached hereto as **Exhibit 16**.

### **COUNT I- BREACH OF CONTRACT**

91. Plaintiffs allege and incorporate the above paragraphs as if fully set forth herein.

92. Defendants materially breached the Building Contract by failing to seek Plaintiffs' authorization of the overages set forth in the Change Order as required by the Building Contract.

93. Defendants further materially breached the Building Contract by including overages for labor costs in the Change Order, which is not provided for under the Building Contract.

94. Plaintiffs have been damaged as a result of Defendants' material breaches of the Building Contract.

## COUNT II- BREACH OF CONTRACT AS TO RED TOP AND RUSSELL

95. Plaintiffs allege and incorporate the above paragraphs as if fully set forth herein.

96. Red Top and Russell materially breached the Building Contract by failing to provide Plaintiffs with the furniture credit upon Plaintiffs closing on the Property, as required by the Building Contract and the Personal Property Bill of Sale.

97. Red Top and Russell further materially breached the Building Contract by including charges for work that was not performed on the Fifth Draw Request, when the Building Contract states that charges included on draw requests will reflect construction milestones reached.

98. Red Top and Russell further materially breached the Building Contract by including a charge for work that was not performed on the Sixth Draw Request, when the Building Contract states that charges included on draw requests will reflect construction milestones reached.

99. Plaintiffs have been damaged as a result of Defendants' material breaches of the Building Contract.

## COUNT III- FRAUDULENT MISREPRESENTATION, OR IN THE ALTERNATIVE, NEGLGIENT MISREPRESENTATION

100. Plaintiffs allege and incorporate the above paragraphs as if fully set forth herein.

101. Defendants represented that any Change Orders issued would be pre-authorized by Plaintiffs and limited to increases in costs of materials used to construct the House over 7.5%.

102. These representations were false when made.

103. These false representations were made either knowingly or with reckless disregard for their truth.

104. These false representations were made in regard to a material fact, as Plaintiffs would not have entered into the Building Contract if they had known that Defendants would issue the Change Order without Plaintiffs' authorization and include alleged charges for increased labor costs on the Change Order.

105. Plaintiffs reasonably relied upon these false representations when entering into the Building Contract.

106. Plaintiffs have been damaged as a result of their reliance on these false representations.

107. Alternatively, these false representations amount to negligent misrepresentations.

### COUNT IV- FRADULENT MISREPRSENTATION, OR IN THE ALTERNATIVE, NEGLIGENT MISREPRESENTATION AS TO RED TOP AND RUSSELL

108. Plaintiffs allege and incorporate the above paragraphs as if fully set forth herein.

109. Red Top and Russell represented that they would provide Plaintiffs with a $40,000.00 furniture credit upon Plaintiffs' closing on the Property.

110. This representation was false when made.

111. This false representation was made either knowingly or with reckless disregard for its truth.

112. This false representation was made in regard to a material fact, as Plaintiffs would not have entered into the Building Contract if they had known that Red Top would fail to provide them with the $40,000.00 furniture credit upon closing on the Property.

113. Plaintiffs reasonably relied upon this false representation when entering into the Building Contract.

114. Red Top and Russell represented that, upon Plaintiffs' payment of the charges set forth in the Fourth Draw Request, Red Top would fully pay and satisfy all debts owed to subcontractors for materials or labor used on the Property.

115. This representation was false when made.

116. This false representation was made with knowingly or with reckless disregard for its truth.

117. This false representation was made in regard to a material fact, as Plaintiffs would not have paid the charges set forth in the Fourth Draw Request if that had known that Red Top would fail to pay and satisfy all debts owed to subcontractors for materials or labor used on the Property.

118. Plaintiffs reasonably relied upon this false representation when paying for the charges set forth in the Fourth Draw Request.

119. Plaintiffs have been damaged as a result of their reliance on these false representations.

120. Alternatively, these false representations amount to negligent misrepresentations.

### COUNT V- CONVERSION AS TO RED TOP AND RUSSELL

121. Plaintiffs allege and incorporate the above paragraphs as if fully set forth herein.

122. Red Top and Russell did not use a portion of the contract price set forth in the Building Contract to provide Plaintiffs' with a $40,000.00 furniture credit upon Plaintiffs closing on the Property.

123. Red Top and Russell never provided Plaintiffs with the $40,000.00 furniture credit.

124. By keeping a portion of the contract price without using it to provide Plaintiffs' with the $40,000.00 furniture credit, Red Top and Russell wrongfully misappropriated Plaintiffs' funds.

125. Red Top and Russell intentionally exercised dominion over the portion of the contract price in violation of Plaintiffs' rights.

126. Red Top and Russell did not apply Plaintiffs' payment of $36,000.72 for the charges set forth in the Fourth Draw Request to pay and satisfy all debts owed to subcontractors for materials or labor used on the Property.

127. Upon information and belief, Red Top and Russell did not pay or satisfy the debt it owed to 84 Lumber.

128. By keeping Plaintiffs' payment of $36,000.72 for the charges set forth in the Fourth Draw Request without using it to pay and satisfy all debts owed to subcontractors for materials or labor used on the Property, Red Top and Russell misappropriated Plaintiffs' funds

### COUNT VI- DECLARATORY JUDGMENT- PROMPT PAY ACT

129. Plaintiffs allege and incorporate the above paragraphs as if fully set forth herein.

130. On February 27, 2023, Red Top and Diamond R, through counsel, sent Mrs. Sawyer a Notice of Prompt Pay Act, demanding payment for the claimed overages in the amount of $45,522.543 within ten (10) days.

131. On March 2, 2023, Red Top and Diamond R, through counsel, sent Mrs. Sawyer a Second Notice of Prompt Pay Act, this time demanding payment for the claimed overages in a different amount, $86,666.21, within ten (10) days.

132. Plaintiffs are entitled to a declaratory judgment determining the rights and responsibilities of the Plaintiffs and Red Top/Diamond R with respect to the Notice of Prompt Pay Act and Second Notice of Prompt Pay Act and pursuant to Tenn. Code Ann. § 66-34-101, *et seq.*

## COUNT VII- DECLARATORY JUDGMENT- MECHANIC'S LIEN

133. Plaintiffs allege and incorporate the above paragraphs as if fully set forth herein.

134. On March 8, 2023, Red Top sent Plaintiffs a Notice of Lien, alleging that the Plaintiffs owe Red Top $86,666.21 and claiming a mechanic's lien on the Property.

135. The above referenced Notice of Lien was filed with the Register's Office for Sevier County at Book 6281, Page 823.

136. Plaintiffs are entitled to a declaratory judgement determining the rights and responsibilities of the Plaintiffs and Red Top/Diamond R with respect to the Notice of Lien and pursuant to Tenn. Code Ann. § 66-11-101 *et seq.*

137. Defendants willfully and grossly exaggerated the amount claimed in the Notice of Lien, and Plaintiffs seek damages, including, but not limited to, attorney's fees, pursuant to Tenn. Code Ann. § 66-11-139.

## COUNT VIII- VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

138. Plaintiffs allege and incorporate the above paragraphs as if fully set forth herein.

139. The Defendants' following acts and omissions amount to violations of the Tennessee Consumer Protection Act ("TCPA") codified at Tenn. Code Ann. § 47-18-101, *et seq.*:

   a. Red Top entered into the Building Contract with Plaintiffs, however throughout the construction process, Plaintiffs received correspondence from Diamond R. Defendants have failed to explain the affiliation, connection, or association between Red Top and Diamond R, in violation of Tenn. Code Ann. § 47-18-104(b)(3).

16

Case 3:23-cv-00118-DCLC-DCP   Document 1   Filed 04/04/23   Page 16 of 20
PageID #: 16

b. Red Top misled the Plaintiffs by promising to provide them with a $40,000.00 furniture credit upon closing of the Property, which represents a price reduction of the contract price of $571,440.00. The Defendants did not provide Plaintiffs with the $40,000.00 furniture credit, and thereby misled the Plaintiffs with respect to the existence of the price reduction, in violation of Tenn. Code Ann. § 47-18-104(b)(11).

140. Defendants employed these acts and omissions in willful or knowing violation of the TCPA.

141. Plaintiffs have been damaged as a result of Defendants' violations of the TCPA.

WHEREFORE, premises considered, Plaintiffs pray that:

1. Process issue and be served on the Defendants, requiring them to answer this Complaint within the time mandated by law;

2. Plaintiffs be awarded a judgment against the Defendants in an amount to be determined at trial;

3. Plaintiffs be awarded punitive damages against the Defendants in an amount to be determined at trial;

4. Declaratory judgment be entered determining the rights and responsibilities of the Plaintiffs and Defendants with respect to the Notice of Prompt Pay Act and Second Notice of Prompt Pay Act and pursuant to Tenn. Code Ann. § 66-34-101, et seq.

5. Declaratory judgment be entered determining the rights and responsibilities of the Plaintiffs and Defendants with respect to Notice of Lien and pursuant to Tenn. Code Ann. § 66-11-101 et seq.

6. Plaintiffs be awarded damages, including, but not limited to, attorney's fees, pursuant to Tenn. Code Ann. § 66-11-139.

7. Plaintiffs be awarded treble damages against Defendants pursuant to Tenn. Code Ann. § 47-18-109(a)(3);

8. Plaintiffs be awarded reasonable attorney's fees and costs pursuant to Tenn. Code Ann. § 47-18-109(e);

9. The Court grant Plaintiffs all other relief to which they are entitled.

This the 4th day of April, 2023.

/s/ Matthew Grossman
Matthew A. Grossman (BPR No. 22107)
Nikol D. Pluess (BPR No. 38605)
**FRANTZ, MCCONNELL & SEYMOUR, LLP**
550 W. Main Street, Suite 500
Knoxville, TN 37902
Email: mgrossman@fmsllp.com
npluess@fmsllp.com
(865) 546-9321
*Attorneys for Plaintiffs*

## COST BOND

We hereby acknowledge ourselves as surety for the Plaintiffs in this cause for the payment of all the Clerk and Master's costs, which may be awarded against the Plaintiffs pursuant to Tennessee Code Annotated § 20-12-120, but no further.

This 4th day of April, 2023.

**FRANTZ, MCCONNELL & SEYMOUR, LLP**

By: _____
Beverly D. Nelms, Esq.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing document has been served this 4th day of April, 2023, upon all counsel or parties as listed below at interest in this cause by delivering a true and exact copy to the offices of said counsel or parties, by either United States mail or Email:

Red Top Exteriors and Roofing, LLC
c/o Registered Agents Inc.
5810 Shelby Oaks Drive, Suite B
Memphis, Tennessee 38134

Diamond R Builders, LLC
c/o Erik W. Russell
2231 Murphys Chapel Drive
Sevierville, Tennessee 37876

Erik W. Russell
2231 Murphys Chapel Drive
Sevierville, Tennessee 37876

David Bartlett
2231 Murphys Chapel Drive
Sevierville, Tennessee 37876

/s/ Matthew Grossman
Matthew A. Grossman
**FRANTZ, McCONNELL & SEYMOUR, LLP**

S:\WDOX\Clients\9956\000001\COMPLAIN\02552477.DOCX

20

Case 3:23-cv-00118-DCLC-DCP  Document 1  Filed 04/04/23  Page 20 of 20
PageID #: 20