UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| BRIANNE SAWYER and LUKE SAWYER, | ) | |
|---|---|---|
| | ) | |
| | ) | 3:23-CV-00118-DCLC-DCP |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RED TOP EXTERIORS AND ROOFING, LLC, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Erik W. Russell's Motion to Dismiss [Doc. 39]. Plaintiffs Brianne Sawyer and Luke Sawyer responded in opposition [Doc. 44]. Thus, the motion is ripe for review. For the reasons stated herein, Russell's Motion to Dismiss [Doc. 39] is **GRANTED IN PART** and **DENIED IN PART**.

I.   BACKGROUND

On September 29, 2021, Plaintiffs entered into a building contract with Defendant Red Top Exteriors and Roofing, LLC ("Red Top") for the construction of a single-family home on property referred to as "Lot 105 Bluffs Mtn" ("the property") at a contract price of $571,440.00 [Doc. 35, ¶¶ 9, 12, 23]. Defendant Erik W. Russell ("Russell"), the president and owner of Red Top, executed the contract on behalf of Red Top [*Id*. at ¶¶ 6, 11]. Plaintiffs allege Russell is the sole member of Red Top as well as Diamond R Builders, LLC ("Diamond R") [*Id*. at ¶ 16]. Plaintiffs further allege that they received correspondence and documentation from both Diamond R and Red Top and that both companies employ the same employees, but no one ever explained the affiliation or business relationship between the two companies [*Id*. at ¶¶ 18, 19, 22].

1

The parties closed on the building contract on October 26, 2021, and excavation began in January 2022 [*Id*. at ¶¶ 13, 14]. Thereafter, Plaintiffs allege various issues arose. First, they state that David Bartlett ("Bartlett"), a representative of Diamond R, notified them in November 2022 that Red Top incurred more than $87,000.00 in overages since the beginning of construction [*Id*. at ¶ 25]. Diamond R then issued a change order for $67,496.29 of overages and Bartlett notified that the remaining overages would be included on future change orders [*Id*. at ¶¶ 26, 28, 29]. The building contract provided that Plaintiffs would be responsible for costs of material increases above 7.5 percent and that all changes and overages must be in writing and agreed upon by Plaintiffs and Red Top [*Id*. at ¶¶ 23, 24]. However, the November 2022 change order included increases in costs of labor and Plaintiffs did not authorize the overages set forth therein [*Id*. at ¶¶ 33, 36]. When Plaintiffs requested documentation for any material overages included in the change order, Red Top and Diamond R failed to provide any proof that the price of the materials purchased increased more than 7.5 percent since execution of the building contract, and many of the receipts included materials used in construction on other unrelated properties [*Id*. at ¶¶ 38–40].

Plaintiffs refused to pay for the overages and, on December 5, 2022, Bartlett informed Mrs. Sawyer that their only options were to "(1) pay Diamond R the full $87,128.62 in claimed overages, (2) have a third-party investor take over the Building Contract, or (3) face a lien foreclosure by Diamond R" [*Id*. at ¶¶ 80, 81]. Due to Plaintiffs' refusal to pay for the overages, construction came to a halt in December 2022 [*Id*. at ¶ 84]. Plaintiffs state that the home remained in the framing stage more than a year after excavation commenced [*Id*. at ¶ 86].

In addition to the foregoing, Plaintiffs take issue with several draw requests made by Red Top throughout the construction process. Specifically, Plaintiffs assert that Red Top sent a draw request in December 2022 for "Finish Roof Materials" in the amount of $10,285.00, but the house

had not been roofed [*Id*. at ¶¶ 49, 53]. In January 2023, Red Top sent another draw request for the cost of the septic tank, but Plaintiffs allege there are no signs that a septic tank was ever installed on the property [*Id*. at ¶¶ 57, 61, 63]. Plaintiffs allege that Russell signed each of the draw requests and authorized and directed that each request be sent to Mrs. Sawyer [*Id*. at ¶¶ 52, 60].

Plaintiffs also received notice of Red Top's failure to pay subcontractors. On December 1, 2022, Plaintiffs received a copy of a Notice of Prompt Pay Act from Jireh Construction to Diamond R, stating that Diamond R failed to pay for $2,500.00 of work performed on the property [*Id*. at ¶ 64]. But Plaintiffs assert that Jireh Construction never performed work on the property [*Id*. at ¶ 66]. Nonetheless, they allege that Diamond R has not resolved the claim [*Id*. at ¶ 67]. On January 19, 2023, Plaintiffs received a Notice of Lien from 84 Lumber Company ("84 Lumber"), notifying that it would be filing a mechanic's lien against the property for $41,534.32 for material provided to Red Top [*Id*. at ¶ 68]. Plaintiffs allege most of the material from 84 Lumber was included in Red Top's fourth draw request for $36,000.72, which was accompanied by an Affidavit of Bills Paid and Release of Liens by Contractor executed by Russell [*Id*. at ¶¶ 70–72]. The affidavit provided:

> Contractor represents, warrants and certifies that all bills owed by Contractor for materials furnished and labors performed in connection with the Work have been or will be fully paid and satisfied. If for any reason a lien or liens are filed for materials or labor against the Property by virtue of the Contractor's participation in the Project by any person claiming by, through, or under the Contractor, then Contractor will immediately obtain a settlement of such lien or liens and obtain and furnish to the owners of the Property a release thereof. Contractor shall indemnify such owners and their respective heirs, successors and assigns from any such bill or liens and from all costs and expenses, including attorney's fees, incurred in discharging any such bills or removing such liens.

[Doc. 35, ¶ 74]. Although Plaintiffs paid the fourth draw request, they assert that the notice from 84 Lumber indicates that Red Top did not pay for the materials provided, as sworn to in the affidavit [*Id*. at ¶¶ 77, 79].

Finally, the building contract included a Personal Property Bill of Sale, which provided that Red Top would give Plaintiffs a $40,000.00 furniture credit to Smoky's Furniture [*Id*. at ¶¶ 42, 43]. The bill of sale provides that the furniture credit would be transferred to Plaintiffs at the closing of the property [Doc. 35-6, pg. 3]. Although the closing occurred on October 26, 2021, Plaintiffs allege they have still not received the furniture credit [*Id*. at ¶ 46].

On February 27, 2023, Red Top and Diamond R sent Mrs. Sawyer a "Notice of Prompt Pay Act," demanding payment for $45,522.53 in overages [*Id*. at ¶ 88]. On March 2, 2023, Red Top and Diamond R sent a "Second Notice of Prompt Pay Act" demanding payment for overages of $86,666.21 [*Id*. at ¶ 90]. Six days later, Red Top sent Plaintiffs a Notice of Lien, alleging that Plaintiffs owed $86,666.21 and claiming a mechanic's lien on the property [*Id*. at ¶ 93]. Red Top then filed the Notice of Lien with the Sevier County Register's Office [*Id*. at ¶ 94].

Based on the foregoing, Plaintiffs initiated this action against Red Top, Diamond R, and Russell seeking a declaratory judgment that Red Top and Diamond R are alter egos and jointly liable for any damages Plaintiffs incurred (Count I), that Diamond R is bound to the obligations set forth in the building contract because it engaged in a joint venture with Red Top (Count II), and to determine the parties' rights and responsibilities with respect to the Notice of Prompt Pay Act and Second Notice of Prompt Pay Act pursuant to Tenn. Code Ann. § 66-34-101, *et seq*. (Count VII) and the Notice of Lien pursuant to Tenn. Code Ann. § 66-11-101, *et seq*. (Count VIII) [Doc. 35]. Plaintiffs also assert the following claims against Red Top, Diamond R, and Russell: breach of contract (Count III), fraudulent misrepresentation (Count IV), negligent misrepresentation (Count V), conversion (Count VI), and violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101, *et seq*. (Count IX) [*Id*.]. Russell now moves to dismiss the claims brought against him pursuant to Fed.R.Civ.P. 12(b)(6) [Doc. 39].

## II. ANALYSIS

A motion to dismiss under Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). To survive dismissal, the plaintiff must allege facts that are sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and dismissal is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Russell asserts that Plaintiffs have failed to allege any facts demonstrating that they are entitled to pierce the corporate veils of either Red Top or Diamond R to impose personal liability on him for their claims [Doc. 39, ¶ 4]. Plaintiffs contend that they are not seeking to pierce the corporate veil [Doc. 44, pg. 4]. Rather, they assert that Russell is liable for his own tortious conduct, even if he was acting on behalf of Red Top or Diamond R [*Id.*]. Because Russell was not a party to the building contract, however, Plaintiffs concede to dismissal of the breach of contract claim as it relates to him [Doc. 44, pg. 4]. Thus, at issue is Russell's personal liability for the following four claims: fraudulent misrepresentation, negligent misrepresentation, conversion, and violation of the TCPA.

Pursuant to the Tennessee Limited Liability Company Act ("TLLCA"), "a member, holder of financial interest, governor, manager, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities, or

5

obligations of the LLC whether such arise in contract, tort or otherwise." Tenn. Code Ann. § 48-217-101(a)(1). Similarly, the Tennessee Revised Limited Liability Company Act ("TRLLCA") provides that "[a] member, holder, director, manager, officer, employee, or other agent of an LLC does not have any personal obligation, and is not otherwise personally liable, for the acts, debts, liabilities or obligations of the LLC[.]" Tenn. Code Ann. § 48-249-114(a)(1)(B). These provisions reflect the longstanding general rule that "[a] director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character[.]" *Cooper v. Cordova Sand & Gravel Co.*, 485 S.W.2d 261, 271 (Tenn. Ct. App. 1971).

These general rules, however, "are subject to exceptions[.]" *Altruist, LLC v. Medex Patient Transp., LLC*, 308 F. Supp. 3d 943, 952 (M.D. Tenn. 2018). Under both the TLLCA and TRLLCA, "a member, holder of financial interest, governor, manager, employee or other agent may become personally liable in contract, tort or otherwise by reason of such person's own acts or conduct." Tenn. Code Ann. § 48-217-101(a)(3); *see* Tenn. Code Ann. § 48-249-114(a)(2) (TRLLCA) ("a member, holder of financial rights, director, manager, officer, employee or other agent may be personally liable by reason of such person's own acts or omissions."). To be sure, "[i]t is settled law that an agent cannot escape liability for tortious acts, including fraud or misrepresentation, against third persons simply because the agent was acting within the scope of the agency or at the direction of the employer." *Brungard v. Caprice Recs., Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980). It is this exception on which Plaintiffs rely to assert liability against Russell. Specifically, Plaintiffs allege that Russell executed and authorized the change order, Personal Property Bill of Sale, draw requests, and Affidavit of Bills Paid and Release of Liens by Contractor and each of the foregoing forms the basis of their misrepresentation, conversion, and TCPA claims against him [Doc. 44, pg. 8].

Piercing the corporate veil is a separate and distinct avenue of personal liability against a member or owner of an LLC. *See Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W201700957COAR3CV, 2018 WL 3740565, at *36 (Tenn. Ct. App. Aug. 6, 2018) ("Tennessee law clearly provides that members, agents, and holders of financial interests in limited liability companies are not to be held liable for the liabilities of the limited liability company except when liable for their own misconduct, . . . or when the corporate veil is pierced.") (citations omitted). Piercing the corporate veil involves "discarding the fiction of the corporate entity" and treating the owners or members "as identical to the corporation." *Edmunds v. Delta Partners, LLC*, 403 S.W.3d 812, 828 (Tenn. Ct. App. 2012). That is not the case here. Plaintiffs do not assert that the separate identities of Red Top and Diamond R should be discarded to hold Russell personally liable. Rather, Plaintiffs allege that Russell is "jointly liable with Red Top and Diamond R for his personal tortious actions and omissions" [Doc. 44, pg. 9]. Thus, Russell's arguments based upon the theory of piercing the corporate veil, to which he devotes the entirety of his brief, are inapposite.

### III. CONCLUSION

Accordingly, for the reasons stated herein, Russell's Motion to Dismiss [Doc. 39] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent Russell seeks to dismiss Plaintiffs' breach of contract claim as it relates to him. The motion is **DENIED** as to the remaining four claims.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge